State of Nebraska, appellee, v. Willie Lee Watson, also known as Wallace George, appellant.

218 N. W. 2d 904

Filed June 6, 1974.  No. 39041.

Frank B. Morrison, Sr., and Stanley A. Krieger, for appellant.

Clarence A. H. Meyer, Attorney General, and James J. Duggan, for appellee.

Heard before SPENCER, SMITH, and NEWTON, JJ., and ZEILINGER and BURKE, District Judges.

ZEILINGER, District Judge.

Defendant Willie Lee Watson, also known as Wallace George, was charged with knowingly uttering an insufficient fund check, exhibit 1, to Goldstein-Chapmans for $124.20 on August 20, 1971, with intent to defraud. He has appealed his conviction and assigns as prejudicial error the reception into evidence of exhibit 8 which is a computer print-out showing rejected transactions of the bank for August 24, 1971. The only issue is

whether or not the State laid sufficient foundation for the admission into evidence of exhibit 8. Section 25-12,109, R. S. Supp., 1972, of the Uniform Business Records as Evidence Act, sets out the requirements for admissibility of business records as evidence; and Transport Indemnity Co. v. Seib, 178 Neb. 253, 132 N. W. 2d 871, 11 A. L. R. 3d 1368 (1965), construes that statute.

In Transport Indemnity Co. v. Seib, *supra*, the court said: "Section 25-12,109, R. R. S. 1943, is as follows: 'A record of an act, condition, or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition, or event, and if, in the opinion of the court, the sources of information, method, and time of preparation were such as to justify its admission.'

"In construing this statute, our court said in Higgins v. Loup River Public Power Dist., 159 Neb. 549, 68 N. W. 2d 170, as follows: 'The purpose of the act is to permit admission of systematically entered records without the necessity of identifying, locating, and producing as witnesses the individuals who made entries in the records in the regular course of the business rather than to make a fundamental change in the established principles of the shopbook exception to the hearsay rule.' * * *

"No particular mode or form of record is required. The statute was intended to bring the realities of business and professional practice into the courtroom and the statute should not be interpreted narrowly to destroy its obvious usefulness."

A résumé of the pertinent evidence follows. Robert Henrichsen, assistant cashier, United States National Bank, who had been with the bank 13 years and manager of the bookkeeping department for 4½ years, testified in substance as follows: Defendant opened the

account August 20, 1971, with a deposit of $140 in currency, signed the signature card, exhibit 3, was assigned account number 548-105, and received blank checks bearing that number in magnetic tape; that exhibit 4 was a check signed by the defendant payable to Hinky Dinky for $46.18 dated August 20, 1971, and was paid by the bank on August 23, 1971; that exhibit 5 was a check signed by the defendant payable to Wards for $57.95 dated August 20, 1971, and was paid by the bank on August 23, 1971; that all checks are processed through an automated system passing the information from the check against the customer's file and if there are sufficient funds on hand the checks are immediately paid and the funds withdrawn from the account and if there are not sufficient funds the checks are rejected and referred to a responsible individual for action and that deposits are posted in the same manner; that exhibits 4 and 5 had markings on the back indicating that they were so processed; that exhibit 7 was defendant's check to Tully's dated August 21, 1971, for $139.73 and was paid by the bank on August 24, 1971, after Tully's deposited $104.06 when defendant's account balance was $35.67 leaving the account 10 cents overdrawn; that exhibit 1, the check on which the complaint is based, was presented on August 24, 1971, and was rejected for insufficient funds; that checks totalling $361.35 were rejected that day as shown by exhibit 8 and the account was closed August 25, 1971; and that one of his duties as manager of the bookkeeping department was to maintain records of rejected checks which was done in the normal course of everyday banking procedures, through the computer print-out and the defendant's insufficient fund checks shown on exhibit 8 were returned to the banks which presented them and that they were not paid through the bank.

The undisputed evidence was that defendant gave exhibit 1 to Goldstein-Chapmans on August 20, 1971, in

exchange for merchandise, and that it was returned because of insufficient funds in his account. Defendant stipulated that exhibits 1, 4, 5, and 7 bore his signature.

Defendant relies on Transport Indemnity Co. v. Seib, *supra*, and points out that in this case foundation stretched over 141 pages of the record. He contends that there was insufficient foundation as to reliability and accuracy of the data system. The defendant's contention cannot be sustained. When the State started to lay foundation as to the accuracy of the system the defendant objected and the objection was erroneously sustained. On cross-examination the defendant asked no questions about exhibit 8 or the accuracy of the system. The defendant cannot complain successfully about any lack of foundation which he improperly succeeded in keeping out. With regard to the quantity of foundation required, this case differs from the Seib case. In the Seib case the exhibit was prepared by and under the direction of a director of the plaintiff who prepared the information fed into the machine. The output necessarily depended upon the figures plaintiff fed into the machine. That is not the situation in this case. In this case the defendant was a customer of the bank. The bank was not a party to this case and was making no claim against defendant. As stated in the annotation of the Seib case, 11 A. L. R. 3d 1377: "* * * there was, long prior to the emergence of the science of electronics, a rule of law under which entries or memoranda made by third parties (that is, persons not necessarily parties to the litigation in question) in the regular course of business, under circumstances calculated to insure accuracy and precluding any motive of misrepresentation, are admissible as prima facie evidence of the facts stated. Moreover, modern statutes of recent development, but still earlier than the general appearance of electronics, provide for the admissibility of certain business books and memoranda. As

typical of these may be cited the federal statute to this effect (28 U. S. C., § 1732), and the Uniform Business Records as Evidence Act."

On the facts in this case there was no abuse of discretion prejudicial to the defendant. No error appearing, the judgment of the District Court is affirmed.

AFFIRMED.

SMITH, J., not participating.